## BURKE v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

District Court, S. D. Alabama.
Jan. 29, 1932.

See, also, 42 F.(2d) 742.

E. W. Pettus, of Selma, Ala., and Smith & Johnston, of Mobile, Ala., for libelant.

E. D. Smith, of Atlanta, Ga., Mallory & Mallory, of Selma, Ala., and Pillans, Cowley & Gresham, of Mobile, Ala., for defendant.

ERVIN, District Judge.

The defendant, some years ago, erected poles on each side of the Alabama river at Selma, and stretched wires across the river on these poles. The wires ran diagonally across the river above the bridge which crosses the river at the point. The river steamers, plying the river, all knew of the existence and location of the wires. The wires were placed high enough to clear the smokestacks of the river steamers even in times of flood.

Some time in the spring, prior to the injury to the boat, the defendant stretched additional wires across the river on these poles two feet lower than those originally stretched. All these wires had considerable sag in the middle. The defendant never applied for or secured any permission, as required by section 403, title 33 U. S. Code (33 USCA § 403), to put up either the first set of wires or to put up the second lot two feet lower.

The usual landing for steamers at Selma is above the bridge, though they occasionally put off freight below the bridge. The boat came up the river during flood water, arriving at Selma late in the afternoon of November 22, 1929. She was tied up below the bridge because the pilot testified that he did not wish to run through the bridge in the night when the current was very strong, and therefore waited until the following morning. He testified that in a conversation that night he heard a member of the crew, who was master of the boat the previous spring, say that he went through at that time during flood water, and at fifteen feet clearance of the wires. That night he telephoned up and had the Alabama Power Company to cut their wires which were strung along the bridge, so that the draw could be opened. The next morning the boat started, and as it was going through the draw of the bridge, the telephone wires caught the top of the smokestacks very near the top, causing the injury complained of.

The evidence convinces me that the wires that caught the smokestacks were the ones which were strung the previous spring. While the evidence showed that the crew of the boat knew of the wires being placed there originally, they had no knowledge that additional wires were strung lower down the past spring.

It is contended that the boat was guilty of negligence because the officers knew of the existence of the wires above the bridge, and made no inquiries to ascertain the clearance between the water and the wires. I do not think, under the circumstances, this contention is correct, because the boat had been running over these waters for years, not only in ordinary water but in flood water, and had cleared. While it is true that the records showing the stage of water at the time of the injury and that of the previous spring when the boat had gone through showed that the officers of the boat were somewhat mistaken in their understanding as to the relative heights of the water, the pilot was told that they had a clearance the previous spring of fifteen feet.

There is evidence not only that the wires which caught the smokestack were strung on the poles after the boat passed through the previous spring, but there is some further evidence which tends to show some further sag, and, in addition to this, there is some strong evidence that the poles on the Selma side of the river, on which the wires were strung, had sunk some distance further in the ground, due to washouts around them. If this were true, and it probably is, this sinking of the poles on the Selma side did cause

also additional sag in the wires over the middle of the stream.

Under all the circumstances, I do not feel that the members of the crew were guilty of negligence in attempting to pass under the wires. Hence, as the wires were strung without any authority, they constitute an obstruction of the stream, and I feel the libelant is entitled to a decree.

It is further contended that Owen Burke, having made affidavit that the boat was owned by the Burke Packet Company, is estopped from filing the libel in his own name.

After considering this question, I conclude the objection is not good.

A decree will therefore be entered in favor of libelant, and appointing S. P. Gaillard to take testimony and ascertain the amount of the damages.